IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-20547
_____

ROBERT L. MOORE; CHESTER R. YOUNG;
LINDA BAKER; ROYAL R. ASTHTON;
DAVID HOLLINS; RANDALL BYRD;
LEON BRICE; RONNIE HUDNALL,

                                    Plaintiffs-Appellants,

WADE BROOKS,

                           Intervenor Plaintiff-Appellant,

ANNIE M. KELLY,

                                              Appellant,

CHRISTOPHER G. LATSON,

                                       Movant-Appellant

                      versus

JAMES A. LYNAUGH, individually and
in his official capacity as the
Director of the Texas Department
of Criminal Justice;
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                                    Defendants-Appellees.

_____

Appeal from the United States District Court
For the Southern District of Texas
(H-88-CV-295)
_____

October 12, 2000

Before JOLLY, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

_____

     [*] Pursuant to 5th Cir. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except

After years of pretrial discovery and motions practice, the common jousts by able lawyers, this case, though complicated below, reaches this court with relatively straightforward controlling issues. We ultimately find no error in the district court's denial of class certification and disposition of individual claims following a bench trial.

The appeal arises out of Title VII, § 1981, and claims brought by black correctional officers employed by the Texas Department of Criminal Justice. The eleven plaintiffs complained of a wide variety of conduct by superiors at the Department, including denied promotions, unjustified suspensions or terminations, racial slurs, inferior postings, and segregated housing. They argued that subjective criteria were used to make promotion decisions and that black corrections officers were wrongly denied promotions; that statistically, black corrections officers were disciplined and terminated at a dramatically higher rate than white or Hispanic officers; that black officers were given posts that were more dangerous and less likely to lead to promotions; that black officers were given living quarters of lesser quality than those given to white and Hispanic officers; and that black officers were subjected to a racially hostile work environment, including the

---

under the limited circumstances set forth in 5th Cir. R. 47.5.4.

frequent use of derogatory racial terms and the leaving of Ku Klux Klan literature at officers' posts.

The plaintiffs initially sought to intervene in the Cirillo class action. After the claims of the black plaintiff, David Jones, were severed from Cirillo, the plaintiffs sought to intervene in the Jones class action. The Cirillo and Jones cases were pending in the same court. After intervention in these pending class actions was denied, the court denied independent certification of the Moore class and tried the claims individually in a bench trial. The court denied the plaintiffs' claims in a 76-page opinion, and the plaintiffs timely appealed.

II

1

The Moore plaintiffs raise several arguments that have no dispositive effect on the case, as we will explain. They make two objections to the district court's holding that most of their Title VII claims were time-barred: that they had 300 days, not 180 as the district court ruled, to file an EEOC charge after an adverse employment action; and that the district court erred in holding that the plaintiffs' claims were untimely because they had not filed within 90 days of the denial of their motion to intervene in a pending class action.[1] They also argue that their § 1981 claims were improperly dismissed.

---

[1]The district court initially ruled in favor of plaintiffs on this issue but reconsidered the issue sua sponte after trial.

The problem with both timeliness arguments is that the district court's opinion notes the timing issues but goes on to address each of the plaintiffs' claims on the merits. Prevailing on these issues thus would not change the outcome of the case.

The court found that the claims of four of the plaintiffs were time-barred.[2] The court did not base its conclusion on the 180 day time limit for filing an EEOC charge. Instead, the court determined that the claims of these plaintiffs, who had already received right-to-sue letters from the EEOC, were time-barred because they failed to file suit within 90 days after their motion to intervene in another suit, Cirilo v. Texas Department of Corrections, No. TY-77-12-CA, was denied. The filing of a class action tolls the limitations period for members of the putative class until class certification is denied, at which time plaintiffs have 90 days to file suit.[3] Since these four plaintiffs sought to intervene in the Cirilo class action and were not permitted to do so,[4] the district court properly concluded that their claims were time-barred once they failed to file suit within 90 days of that

_____

[2]Plaintiffs Moore, Ashton, Hollins, and Brice.

[3]See Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 354 (1983).

[4]The Cirilo court denied the Moore plaintiffs' motion to intervene when the Cirilo class was redefined to include two subclasses: one of Mexican-American plaintiffs who alleged a hostile work environment and discriminatory hiring practices based upon their national origin, and a second subclass of black applicants who alleged that they were not hired by the Texas Department of Criminal Justice on account of their race.

4

denial. Whether the district court erred in applying a 180-day limitations period for filing an EEOC charge is irrelevant to these plaintiffs' claims, since the court found that they had received right-to-sue letters but failed to file suit within the 90 period following the denial of their motion to intervene in the Cirilo class action.

2

The plaintiffs argue that the limitations period continued to be tolled because they attempted to intervene in another pending class action, Jones v. Texas Dep't of Corrections, No. TY-87-364. The district court correctly concluded that the plaintiffs could not use both class actions to toll the running of the limitations period for filing suit. This court has previously refused to allow a putative class to "piggyback" one class action upon a previous one in an effort to continue to toll the limitations period for a Title VII suit, reasoning that the practice would be too easily abused.[5] Here, the Moore plaintiffs believed they could continue to toll the limitations period as they shopped for a pending class action rather than file their own, and the district court properly rejected their effort to do so. The plaintiffs argue that they did not try to "piggyback" two identical class actions, since Cirillo and Jones were different suits with different issues. However, the Moore plaintiffs were the same group of plaintiffs with the same

[5]See Salazar-Calderon v. Presidio Valley Farmers Ass'n, 765 F.2d 1334, 1351 (5th Cir. 1985).

issues on each motion to intervene, and the district court properly applied the reasoning of Salazar-Calderon to conclude that the Moore plaintiffs could not toll the limitations period in successive motions to intervene in pending class actions.

In any event, the court considered and rejected their claims on the merits. Similarly, the district court addressed the merits of the plaintiffs' claims regarding denied promotion, which Moore contends were actionable under § 1981. The district court concluded that none of the plaintiffs was denied a promotion based on race.

III

The Moore plaintiffs also argue that the district court erred in failing to address their § 1983 claims. Plaintiffs may sue both under § 1983 and Title VII if the employer's conduct violates a separate constitutional right in addition to Title VII.[6] Recently, this court reaffirmed that Title VII and § 1983 are not mutually exclusive remedies, and that a plaintiff may pursue claims under both statutes.[7]

None of the court's orders issued throughout the case reference a § 1983 claim, but the introductory paragraph of the final order of the district court recites that the plaintiffs

---

[6]See Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1753 (5th Cir. 1989).

[7]See Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 548-49 (5th Cir. 1997).

6

alleged, inter alia, violations of the Equal Protection Clause.
The order does not address any claim brought under § 1983. We have
reviewed the pretrial order and briefs to the District Court. We
are persuaded that no claim under 42 U.S.C. § 1983 was filed or
presented.

IV

Moore argues that the plaintiffs were erroneously denied a
jury trial. Where a plaintiff brings both §1981 claims and pre-
1991 Title VII claims, a jury must decide the § 1981 claims before
the court hears the Title VII claims.[8] The plaintiffs assert that
they were denied a jury trial over their protest, and that the
court gave as its reason for the denial that it did not want to
waste a day on voir dire. The Department argues that the Moore
plaintiffs agreed to a bench trial below and complain only now that
they wanted a jury trial. We have reviewed the record, including
the transcript of the docket call proceedings of April 19, 1998.
We are persuaded that any rights to a jury trial were waived. If
the district court decided there in a way that it is clear that the
claim would not have survived a motion for directed verdict, there
is no prejudice even if there was no waiver of a jury.

V

The district court refused to certify the requested class
because it concluded that the named plaintiffs could not adequately

---

[8]See Lytle v. Household Mfg, Inc., 494 U.S. 545, 550 (1990).

7

represent the interests of the proposed class, commonality and typicality were not met, and the geographic and temporal scope of the alleged events were overbroad.

Class certification in an employment discrimination suit is not proper where the named plaintiff did not suffer the same type of injury as other members of the proposed class.[9] The court determined that the named representatives lacked standing to pursue the claims of members of the proposed class. To possess standing, plaintiffs, as a class, must have suffered the type of injury for which they seek to recover; membership in a common racial, ethnic or economic group is insufficient.[10] Having suffered injury is not sufficient to create standing to press claims for a qualitatively different kind of injury.[11] The district court determined that the proposed class should not be certified because its members suffered different injuries. Some alleged that they were not promoted because of discriminatory practices in promotion. Others claimed that they were targeted for discipline by superiors because of their race. All complained of a racially hostile environment at the Retrieve unit around 1985 to 1987. The court determined that the plaintiffs sought to represent all black corrections officers in TDCJ, but that the plaintiffs had not suffered injuries of the

---

[9]See General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 157 (1982).

[10]See Warth v. Seldin, 422 U.S. 490, 502 (1975).

[11]See Blum v. Yaretsky, 457 U.S. 991, 1001-02 (1982).

8

type they claimed to be suffered by black corrections officers throughout TDCJ.

The plaintiffs argue that the district court improperly based its denial of class certification on the merits of their claims. The trial court may determine whether the named class representative suffered an injury that gave him standing to represent the class.[12] The court determined that the plaintiffs had not suffered injuries of the type they sought to represent. For example, plaintiff Hall admitted that his scores on qualifying examinations for electrical and pluming maintenance jobs were low, and he was promoted to food service manager, which was outside the proposed plaintiff class of security employees. Latson admitted that he never applied for a promotion. Moore sought to skip from guard to lieutenant without working as a sergeant and that he later stopped applying for promotions, although application was required. Plaintiff Hudnall, who was terminated, had a long history of disciplinary actions taken against him. Plaintiff Kelley complained that she was denied promotions to various positions, none of which were the correctional positions sought to be represented by the proposed class. Furthermore, the court determined that while the complaints of the plaintiffs were limited to 1985-1987 at the Retrieve unit of TDCJ, the class they sought to represent expanded into the past and future, and included 48 penal

---

[12]See Johnson v. Rodriquez, 110 F.3d 299, 315 (5th Cir. 1997).

9

institutions and 6 detention centers, with which the plaintiffs had no connection. Rather than reaching the merits of their claims, the district court properly determined that these plaintiffs were not able to adequately represent the interest of the proposed class of black corrections officers because they had not suffered injury to their interests in promotions within that class; that this was an effort to proceed as an "across the board" claim of discrimination. We find no error in the denial of certification and no abuse of discretion.

VI

(i) Robert L. Moore

Moore raises several challenges to the district court's resolution of the Title VII claims. Moore appeals the district court's holding that the plaintiffs' claims of segregated housing and other discrimination were not actionable under Title VII because there was no ultimate employment decision. Moore also challenges the district court's factual findings on the plaintiffs' claims of hostile work environment and retaliation.[13]

Moore presents no facts or argument explaining which factual conclusions of the district court were in error. Moore does not

---

[13]Moore also disputes the standard applied for burden-shifting purposes, arguing that direct evidence was presented that makes the McDonnell Douglas test inapplicable. The plaintiffs correctly note that McDonnell Douglas burden shifting is inappropriate in cases in which the plaintiff relies on direct evidence of discrimination. See Brady v. Fort Bend County, 145 F.3d 691, 711 (5th Cir. 1998). Since the plaintiffs relied on circumstantial evidence of discrimination, the district court did not err.

confront the district court's conclusion that the employment actions taken against the plaintiffs were based on infractions of rules, such as failing to fire at escaping inmates, betting with inmates, or stopping at a guard's house in the course of transporting an inmate. Moore also presents no rebuttal to the district court's conclusion that the incidents of racial slurs and Ku Klux Klan pamphleting were not sufficiently pervasive and were counteracted by steps taken by the Department.

(ii) Chester R. Young

Young claimed that he was not promoted to various jobs as a mechanic or in food service, but that white employees were given those positions rather than he because he was black. Testimony from Carol Jones of TDCJ's human resources department showed that Young did not apply for most of the positions about which he complained and that he was not qualified for the positions or less qualified that the candidate selected. The court also found misrepresentations and inconsistencies on the applications that Young filed.

Young claims that he was subjected to a racially hostile work environment, with Ku Klux Klan literature found at his posts and hearing racially derogatory terms used. The court found that Young was not subjected to a racially hostile work environment because the incidents were not sufficiently severe or pervasive to be actionable.

(iii) Linda Baker

11

Baker filed her EEOC charge November 20, 1987, so her claims of discriminatory failure-to-promote in 1984 and 1985 were not timely asserted, since these were more than 300 days prior to the filing of her charge of discrimination. Baker was terminated October 12, 1987. She claimed that her termination was in retaliation for her complaints of discrimination. The district court found that Baker was terminated because four inmates escaped near her post and she made no effort to prevent their escape, for example, by firing her weapon as authorized to prevent escapes. Furthermore, Baker had a long history of disciplinary actions taken against her. Baker argues that white officers had not been terminated because of escapes. The Department pointed out that a white officer manning another picket was recommended for termination as a result of the escape for which Baker was terminated.

(iv) Royal R. Ashton

Ashton claims that he was discriminatorily disciplined and denied a pay increase because of his participation in the "officer's rebellion": a meeting of black corrections officers to discuss race discrimination at the Retrieve unit. The district court found that document evidence showed that Ashton was chronically absent or late to work without excuse and that during 1985, when Ashton claimed he was targeted for retaliation, he was absent or late without excuse 9 times.

(v) David Hollins

12

Hollins claims that he was discriminatorily disciplined and not promoted because of his race. The district court found that document evidence showed that Hollins was frequently absent from work without excuse, disciplined for insubordination for swearing at a superior, and disciplined for wearing an improper or partial uniform. Employee discipline, without more, is not an ultimate employment decision actionable under Title VII.[14] Hollis is still employed as a corrections officer by TDCJ. The district court correctly concluded that Hollins had no cause of action based upon the disciplinary actions taken against him; that he failed to prove his failure to promote claim. In any event, his employment history would provide a race-neutral reason for not promoting him. We find no error.

(vi) Randall Byrd

Byrd was suspended for allegedly falsifying an inmate count sheet and verbally reprimanded for leaving a steel milk can in the cell of an inmate with psychological problems. He was recommended for termination and failed to attend the termination hearing. He was subsequently terminated, and he claims that his termination was in retaliation for his complaints of discrimination. Byrd denies that he falsified the inmate count sheet. He appears to argue that because he was fired three weeks after filing an EEOC charge, there is proof that his termination was in retaliation for his filing

---

[14]See Mattern v. Eastman Kodak Co, 104 F.3d 702, 708 (5th Cir. 1997).

13

that charge.  However, Byrd filed his first EEOC charge  November 13, 1985, and he was suspended for the count sheet matter  August 22, 1985.  This was the incident that led to his termination.  The district court properly concluded that Byrd's claims are meritless and we find no error in that judgment.

(vii) Leon Brice

Brice alleged he was discharged because of his race.  Brice was discharged for betting on a football game with an inmate.  Brice argues that white officers too gambled with inmates and were not terminated.  He does not identify any of these officers in his brief.  The district court properly concluded that Brice failed to show that the neutral reason TDCJ offered for his termination was pretext for discrimination.

(viii) Ronnie Hudnall

Hudnall was terminated for excessive absenteeism.  Documentary evidence showed that Hudnall was frequently absent without excuse.  Hudnall argues that white and Hispanic officers were not disciplined for lateness or absenteeism, and he states that he was told by someone that white supervisors were out to "get him" after he filed his EEOC charge.  Hudnall does not identify any white or Hispanic officers in his brief who were not disciplined or terminated for similar infractions.  The district court properly concluded that Hudnall failed to offer evidence to rebut TDCJ's race-neutral reason for his discharge.

(ix) Annie M. Kelley

14

Kelley complained that she was subjected to a racially hostile work environment and passed over for promotions that went to white employees. She specifically identifies only one incident in which another officer used a racial slur in her presence, which was directed toward her. She fails to show evidence from which the district court could have concluded that racially offensive comments were severe or pervasive enough to support a hostile work environment claim. Furthermore, she fails to identify any white employee who received a promotion for which she applied, so it is impossible to determine whether the district court properly concluded that Kelley failed to show that she was better qualified that white employees who received promotions.

(x) Christopher Latson

Latson was suspended for making an unauthorized stop at another officer's apartment during an ambulance run. The other officer was also suspended. Latson argues that he should not have been suspended because the other officer was of a higher rank. Latson was later terminated for failing to comply with sick leave policy, for failing to return from disability leave and failing to provide required documentation of his disability. Latson asserts that he complied with the policy, but he does not state that he returned to work as required or provided the required documents. Latson argues that the discipline and termination were in retaliation for his complaints of discrimination. The district

15

court properly concluded that Latson failed to offer evidence to rebut TDCJ's nondiscriminatory reason for these actions.

(xii) Wade Brooks

Brooks was suspended without pay and subsequently terminated. While on probation for unexcused absences from work, Brooks was suspended for failure to load his weapon while on patrol. On his return, he was on picket duty at the Eastham unit and failed to obey an order to call in to his supervisor every 30 minutes. Brooks argues that he did not have to obey this order because, although he was on duty in the Eastham unit, the practice of calling in was peculiar to the Eastham unit and not an agency-wide policy. The Warden ordered Brooks to appear in his office to discuss this incident, and Brooks failed to appear. Brooks also failed to attend his termination hearing. Brooks claims that he told the Warden that everyone in the unit acted "like they're in the Klan," to which the Warden allegedly replied "[y]ou damn right, and I'm the ringleader. I suspended you and that's that, try and file a grievance." The district court's findings of fact are reviewed for clear error.[15] The district court properly concluded that Brooks failed to show that his suspension and termination were pretext for race discrimination.

VII

---

[15]See Black v. Food Lion, 171 F.3d 308, 310 (5th Cir. 1999).

16

The district court did not err in finding some of the plaintiffs' claims time-barred, since these plaintiffs failed to file suit within 90 days after their motion to intervene in a pending class action was denied. There were no claims made under § 1983. Any right to a jury trial on a § 1981 claim was waived. In any event, the few claims for which there would be a right to a jury trial did not reach trial.

The district court properly denied class certification, because the named plaintiffs have claims that are individualized and different from one another, and because they sought to represent a class that was overly broad in temporal and geographic scope.

AFFIRMED.